**United States District Court**
**Northern District of Indiana**
**Hammond Division**

| | |
|---|---|
| ANDREW J. SAJDA, JR., and JOSEPHINE SAJDA, as Administrator of the ESTATE OF ANDREW J. SAJDA, SR., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 2:08-CV-255 JVB ) |
| FLOYD BREWTON and R&L TRANSFER, INC., a corporation, and R & L CARRIERS SHARED SERVICES, LLC., | ) ) ) ) ) |
| Defendants. | ) |

**OPINION & ORDER**

Early one winter morning, Andrew Sajda Sr. was helping his son, Andrew Sajda Jr. change a tire on the side of the Indiana Toll Road. Unfortunately, the Sajdas were involved in an accident where Sajda Sr. was killed and Sajda Jr. injured. On August 7, 2008, Sajda Jr. and the estate of Sajda Sr. filed this case in the Superior Court of Porter County, Indiana. Defendants Floyd Brewton and R & L Transfer, Inc., removed the case to this Court on September 9, 2008. Plaintiffs filed a Motion to Exclude Expert Testimony on August 13, 2010, and Defendants filed one on August 20, 2010. The Court held a hearing on these motions on January 14, 2011.

**A. Background Facts**

Early in the morning on February 2, 2008, Plaintiff Sajda Jr. was driving his Nissan on I-80. His front-left tire went flat, and he pulled over onto the shoulder to change the tire. Using the

car jack provided with his car, he was unable to raise the car high enough to put the spare tire on. He called his father, Sajda Sr., and asked him to bring a floor jack from Sajda Jr.'s garage. Sajda Sr. retrieved the jack and brought it to Sajda Jr. Before Sajda Sr. arrived, Trooper Hetrick of the Indiana State Police stopped to check on Sajda Jr. and left after learning of the situation. Sajda Sr. parked in front of Sajda Jr.'s car and proceeded to help Sajda Jr. change the tire. Sajda Jr. claims that Sajda Sr. was sitting cross-legged facing the Nissan's front-left wheel.

While the Sajdas were changing the tire, Defendant Brewton was driving on I-80. He was driving a semi-truck with two trailers for Defendant R & L Transfer. Shortly before the accident with the Sajdas, Brewton claims that a black sedan struck the rear tire of the truck's second trailer as it was re-entering the roadway from the shoulder. Brewton saw the Sajdas' stopped vehicles, but claims he did not see the Sajdas and that he was unable to change into the left lane because of aggressive driving by the black sedan that had struck his tire. He slowed down, but, according to plaintiffs, both Sajdas were hit by his truck. Sajda Jr. suffered injuries and Sajda Sr. was killed. Brewton did not stop after the accident and claims the he was unaware that the accident occurred until he was informed of it later.

A police investigation eventually discovered that Brewton had been driving the truck that hit the Sajdas. The police involved in this investigation included Sergeant Pete Wood, Trooper Clint Hetrick, Detective Don Curl, and Sergeant Dave Kintzle.

After the accident, Plaintiffs retained the services of Stephan M. Neese, an accident reconstructionist. After his investigation, Neese reached the following opinions.

    1.    "The truck driven by Floyd Brewton did impact both Sajda Jr. and Sr. with Andrew Sr. sitting on the ground and Andrew Jr. standing to the west of his dad."

2

(Collision Study, DE 66-1 at 9.)

2. "Floyd Brewton's account, in sworn testimony, of the truck damage is inconsistent with the physical evidence and the dynamics of the "collision" he describes defies scientific principles." (Collision Study, DE 66-1 at 9.)

3. "Floyd Brewton was negligent in driving his truck by not slowing down and moving to the left lane after recognizing two vehicles with their hazard lights flashing, and off the traveled portion of the road and onto the shoulder striking Andrew Sajda Sr. and Andrew Sajda Jr." (Collision Study, DE 66-1 at 15.)

4. "Floyd Brewton knew he struck one or both of the pedestrians with his truck while traveling eastbound at or near the 28.7 mile marker." (Collision Study, DE 66-1 at 16.)

5. "Neither Andrew Sajda Jr. nor Andrew Sajda Sr. were negligent as they pulled their respective vehicles to the shoulder of the road, completely off the traveled portion to change a flat tire, and both activated their hazard warning lights to alert oncoming motorists of their presence." (Collision Study, DE 66-1 at 23).

After further investigation, Neese came to the additional opinion that "[t]he 'Company' was aware of the truck driven by Floyd Brewton had struck a pedestrian by 6:00 AM, February 2, 2008 and [the newly acquired computer printout] contradicts the 'Company's' previously produced records." (Supplemental Report, DE 66-2 at 2.)

Plaintiffs also hired Walter A. Guntharp Jr. to serve as a safety and commercial vehicle expert. After his investigation, Guntharp reached the following opinions:

1. Floyd Brewton falsified his application and should not have been hired by R & L.

2.  R & L failed to properly investigate the information provided to them by Brewton's previous employers.

3.  R & L routinely failed to properly audit Floyd Brewton's daily logs and consequently, allowed him to routinely falsify his hours of service.

4.  The failure by R & L to properly investigate Floyd Brewton's background and driving record was a violation of the Federal Motor Carrier Safety Regulations (FMCSR) part 391.11, which requires a motor carrier to verify that a driver can safely operate a commercial motor vehicle.

5.  The failure by R & L to properly audit Floyd Brewton's logs for accuracy and compliance is a violation with the requirements of FMCSR Part 395.

6.  R & L failed to document or verify Floyd Brewton's attendance of any safety meetings during his tenure with R&L.

7.  Floyd Brewton routinely falsified his logs and failed to accurately log the time that it took him to complete his trips from Chicago to Howe, Indiana and his trips to South Bend, Indiana.

8.  On February 2nd, 2008, at approximately 6:01 a.m., Floyd Brewton entered the shoulder of eastbound I-80 and struck Andrew Sajda Sr. and Andrew Sajda Jr.

9.  Floyd Brewton failed to stop after striking the Sajdas and failed to report the collision to his company or to any law enforcement agency.

10. Floyd Brewton had ample opportunity to observe the disabled Sajda vehicle and move to the left lane, but failed to do so.

11. Floyd Brewton also failed to move left at the 26 mile marker when he observed an

unknown black vehicle attempting to move to the eastbound travel lane from the shoulder. Mr. Brewton's failure to exercise common defensive actions and move left as he approached a merging vehicle resulted in yet another collision that he failed to report to the police.

12. Based on his failure to move left to avoid a conflict with a disabled vehicle, his testimony that he never saw the pedestrians around the Sajda vehicle, and his statements to Raymond Jones while at the fuel pumps on the morning of the collision, Floyd Brewton was operating his commercial motor vehicle while fatigued. Such operation is in violation of FMCSR 392.3 which expressly prohibits operation while ill or fatigued.

13. The failure by Floyd Brewton to operate in a safe and prudent manner as expected of a professional truck driver was the cause of the death of Mr. Andrew Sajda Sr. and the injuries to Mr. Andrew Sajda Jr.

(Report, DE 66-5 at 4-5.) After further investigation, Guntharp reached the additional opinions "that R & L Transport, Inc. was aware that Mr. Brewton had been involved in a fatal accident prior to being notified of the investigation by the Indiana State Police" and "that in spite of knowing that one of their employees had been involved in a fatal hit and run collision, R & L personnel failed to notify the proper authorities in a timely manner, instead concealing the collision from authorities until contacted by the police." (Letter of Additional Opinion, DE 66-6 at 2.)

After the accident, Defendant R & L Transfer retained the services of John Goebelbecker, an accident reconstructionist. After his investigation, Goebelbecker reached the following

5

opinions:

1. The physical evidence available on the roadway, vehicles and pedestrians is not sufficient to locate the precise point of impact on I-80.

2. The damage pattern and evidence of human matter on the tractor indicates that Mr. Sajda, Sr. was moving laterally toward the tractor prior to impact

3. Mr. Sajda, Sr. was further away from the Nissan than where Mr. Sajda, Jr. was standing while operating the scissor jack when the R&L Transfer truck passed by.

4. The animations created by the opposing expert are inaccurate and lack scientific foundation.

5. Officer Hetrick failed to protect the health and safety of the Sajda's when he abandoned them on the shoulder of the interstate in the dark with a disabled vehicle.

(Goebelbecker's Report, DE 59-1 at 6.)

After further investigation, Goebelbecker reached the following additional conclusions:

1. Mr. Sajda did not place the scissor jack in the proper position under the Nissan pickup truck. He placed the jack under the fender, whereas the jack should have been placed under the designated jack-up point adjacent to the arrow stamped in the frame. Mr. Sajda also failed to heed the following warning in the owner's manual: "Never change tires if oncoming traffic is close to your vehicle. Wait for professional road assistance."

2. The evidence is not consistent with Mr. Sajda, Sr. being struck while sitting cross-legged facing the front left wheel of the Nissan while Mr. Sajda, Jr. operated the

scissor jack.

(Goebelbecker's Supplemental Report (DE 59-1 at 8).)

**B. Legal Standard**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The district court should act as a "gate-keeper" and determine if a purported expert's testimony is reliable and relevant before accepting the witness as an expert. *Winters v. Fru-Con, Inc.*, 498 F.3d 734, 741-742 (7th Cir. 2007) (quoting *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 749 (7th Cir. 2006)). When determining whether an expert is qualified to render an opinion in a given area, the court should consider the expert's full range of practical experience as well as academic or technical training. *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)). Furthermore, an expert testimony "must testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury." *Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998).

**C. Discussion**

**(1)** *Plaintiffs' Experts*

(a) *Stephan A. Neese*

Neese's qualifications are not in dispute in this case. (Df.'s Memo. Law Supp. Mot. Exclude Pl.'s Expert Witness, DE 66 at 4). The only question is whether his opinions are relevant and helpful to the jury.

Some of Neese's opinions are relevant and formed on the basis of reliable principles and methods because they are based of his years of experience and training in the field of accident reconstruction, as well as his investigation into the case. His opinions will be helpful to the jury because he has more experience in the field of accident reconstruction than the average layperson. Therefore, Neese may testify about his opinion that the truck Brewton was driving struck the Sajdas and their relative positions during the accident, that Brewton's account of what happened is inconsistent with the evidence, and that the impact caused by the accident should have been strong enough to alert Brewton that he had hit something or someone. Also, he may testify that, in his opinion, the Sajdas were not negligent.[1]

However, he will not be allowed to testify as to his opinion that "Floyd Brewton was negligent in driving his truck by not slowing down and moving to the left lane after recognizing two vehicles with their hazard lights flashing, and off the traveled portion of the road" because there is no evidence that Brewton failed to slow down and the jury has sufficient knowledge to know that a driver should slow down and move over if possible when approaching vehicles on the side of the road. Furthermore, his opinion on when R & L knew of the accident will not help

---

[1]Opinions # 1,2,4 and 5.

the jury because it is based on information found on a printout from R & L's computer records, and no expertise is required to reach that conclusion.[2]

(b) *Walter A. Guntharp Jr.*

Defendants do not question Guntharp's qualifications in the area of safety programs and operational practices for trucking companies. (Df.'s Memo. Law Supp. Mot. Exclude Pl.'s Expert Witness, DE 66 at 10). They do, however, question his qualifications in the field of accident reconstruction. (*Id.*) Because Guntharp has not received any training in accident reconstruction and does not even claim to be an accident reconstructionist, he is not qualified to offer opinions on accident reconstruction.

While most of Guntharp's opinions are not proper for expert testimony, he will be allowed to testify about his opinion that Brewton should have moved over when he saw the Sajdas' vehicles on the side of the road, provided however that this opinion is based on industry standards, not merely on Guntharp's personal opinion of what Brewton should have done.[3]

Guntharp will not be allowed to testify about the remainder of his expert opinions. He will not be allowed to testify about his opinions that Brewton falsified his application and R & L should not have hired him, that R & L did not adequately investigate the information about Brewton it received from his previous employers and thus violated federal regulations, that R & L failed to properly audit Brewton's logs and thus violated federal regulations, that R & L failed to document Brewton's attendance at any safety meetings, and that Brewton routinely

---

[2]Opinion # 3 & Additional Opinion.

[3]Opinion # 10.

9

falsified his logs because there is no evidence that these actions were proximate causes of the accident. He will also not be allowed to testify about his opinions that Brewton entered the roadway and struck the Sajdas on February 2, 2008 at 6:01 a.m. and that Brewton failed to stop after striking the Sajdas and failed to report the collision because he has no knowledge of these events other than the police reports and the opinions of Neese and he is not an accident reconstructionist. Furthermore, he will not be allowed to testify about his opinion about Brewton's behavior in the accident with the black sedan because that incident has nothing to do with the accident involving the Sajdas. Additionally, he will not be allowed to testify about his opinion that Brewton was fatigued at the time of the accident because it is not based on sufficient evidence. Finally, Brewton will not be allowed to testify about his opinion that Brewton's failure to operate in a safe and prudent matter caused the accident because this is the ultimate issue that the jury must decide.[4]

(c) *Police Officers*

Sergeant Pete Wood, Trooper Clint Hetrick, Detective Don Curl, and Sergeant Dave Kintzle are members of the Indiana State Police. All of them were involved in the investigation of the accident. Plaintiffs have indicated that they wish to call the officers to testify about their reconstruction of the accident. Defendants have objected to this, claiming the officers have either not completed any reconstructions in this case or are not qualified to do so.

Hetrick, Curl, and Kintzle have never received any training in accident reconstruction. Wood has received some training in accident reconstruction. However, in this case, whether they

---

[4]Opinions # 1-9, 11-13 & Additional Opinions.

had any training does not matter as none of them have completed any accident reconstruction. Therefore, the officers will not be allowed to testify as experts about accident reconstruction. They will, however, be allowed to testify about their observations of the accident site and their investigations.

**(2)** *Defendant's Expert - John Goebelbecker*

Goebelbecker's qualifications are not in dispute in this case. (Mem. of Law in Supp. of Pl.'s Mot. to Exclude Expert Test., DE 59 at 5). The only question is whether his opinions are relevant and helpful to the jury.

The Court finds that many of Goebelbecker's opinions are relevant and based on reliable principles and methods because they are based on his investigation of the incident, as well as the knowledge he has obtained as a result of his training and many years of experience in accident reconstruction. His opinions will be helpful to the jury because he has more experience in the field of accident reconstruction than the average layperson. Therefore, Goebelbecker may testify about his opinions that there is insufficient evidence to locate the precise point of impact, that Sajda Sr. was moving laterally toward the truck before impact, that Sajda Sr. was farther away from the Nissan, that Neese's animations are inaccurate, and that the evidence does not support the positions of the Sajdas prior to impact that is provided by the Plaintiffs.[5]

However, some of Goebelbecker's opinions are not appropriate for expert testimony. Goebelbecker's opinions on the actions of Officer Hetrick and Sajda Jr.'s improper use of the jack will not help the jury because they are simply irrelevant. His opinion that Sajda Jr. did not

---

[5]Opinions # 1-4 & Additional Opinion # 2.

follow the warning in the owner's manual is not helpful because no expert knowledge is required.[6]

**D. Conclusion**

Accordingly, The Defendant's Motion to Exclude or Limit Testimony of Plaintiff's Expert Witnesses [DE 65] is GRANTED in part and DENIED in part. Neese will not be allowed to testify as to his opinions that Brewton was negligent because he failed to slow down and move to the left lane and that R & L knew about the accident by 6:00 on February 2, 2008. Guntharp will be allowed to testify that Guntharp had enough time to move over. The police officers will not be allowed to testify as experts on accident reconstruction, but they will be able to testify about their observations of the crash site and their investigations into the crash.

The Plaintiff's Motion to Exclude Expert Testimony [DE 58] is GRANTED in part and DENIED in part. Goebelbecker will not be allowed to testify about his opinions on the actions of Officer Hetrick, whether Sajda Jr. was using the car jack properly, or that Sajda Jr. failed to follow the warning in the owner's manual.

SO ORDERED on February 10, 2011

    s/Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge

---

[6]Opinion # 5 & Additional Opinion #1.